No. 24-5615

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Nov 14, 2024

KELLY L. STEPHENS, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) ORDER |
| PAUL VAUGHN, | ) |
| | ) |
| Defendant-Appellant. | ) |

Before: NORRIS, KETHLEDGE, and LARSEN, Circuit Judges.

In March 2021, Paul Vaughn participated in a demonstration that blocked the entrance to an abortion clinic in Mt. Juliet, Tennessee. A jury convicted him of violating the Freedom of Access to Clinic Entrances (FACE) Act, in violation of 18 U.S.C. § 248(a)(1), and of conspiring to violate federally protected rights, in violation of 18 U.S.C. § 241. The district court sentenced Vaughn to three years of supervised release, including six months of home detention. He seeks a stay of that sentence pending an appeal of his conviction. We deny the stay.

As relevant here, beginning in February 2021, Vaughn and at least ten of his co-defendants planned a demonstration at the Carafem Health Center, an abortion clinic in Mt. Juliet, Tennessee. On March 5, they executed their plan. Shortly before eight in the morning, they entered the hallway outside the clinic's suite and began livestreaming. Several demonstrators sat in front of the clinic doors and blocked at least one patient and at least one employee from entering. During

the demonstration, Vaughn spoke with police officers to try to buy the demonstrators "as much time as [he could]." The demonstration lasted almost three hours, and the clinic resumed seeing patients that afternoon. A grand jury later indicted Vaughn and his co-defendants for their roles in the demonstration.

"The power to grant a stay pending review [has been] described as part of a court's traditional equipment for the administration of justice." *Nken v. Holder*, 556 U.S. 418, 427 (2009). To evaluate Vaughn's motion for a stay, we apply the factors the Supreme Court laid down in *Nken*: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434. The first two factors are most important. *Id.* Although Vaughn need not "show a high probability of success on the merits," he must "show, at a minimum, serious questions going to the merits" to satisfy *Nken*'s first factor. *See Luxshare, Ltd. v. ZF Automotive US, Inc.*, 15 F.4th 780, 783 (6th Cir. 2021) (citation omitted).

Vaughn seeks to incorporate by reference a 53-page motion to dismiss he filed in the district court. We generally do not allow this practice. *See* Fed. R. App. P. 27(a)(2)(A); 27(d)(2)(A). Given that Vaughn has already begun to serve his term of home confinement, however, we look to the substance of his arguments to assess their likelihood of success rather than order another round of briefing.

In all, Vaughn challenges his convictions on six independent grounds. Only three warrant much discussion. First, Vaughn argues that, under the FACE Act, the Department of Justice has selectively prosecuted pro-life demonstrations while turning a blind eye to attacks on pregnancy-resource centers and churches. Although prosecutors have significant latitude to decide whom to

prosecute, the Fourteenth Amendment's Equal Protection Clause limits their discretion. *Wayte v. United States*, 470 U.S. 598, 608 (1985). Selective prosecution violates the Fourteenth Amendment when (1) the government singles out someone who belongs to a group that is exercising its constitutional rights, while not prosecuting persons who don't belong to that group but commit similar conduct, (2) the government initiates the prosecution with a discriminatory purpose, and (3) the prosecution has a discriminatory effect on the group in question. *See Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997). To satisfy the first element, a defendant must at least make "a prima facie showing that similarly situated persons outside her category were not prosecuted." *Id.*

Here—as evidence that the government has targeted pro-life activists—Vaughn points to the Biden administration's formation of a reproductive rights task force as well as a Department of Justice press release that promised to enforce the FACE Act "to ensure continued lawful access to reproductive services." But neither of those facts show that the government has refused to prosecute "attacks" upon pregnancy-resource centers. Vaughn also cites a study by the Crime Prevention Research Center (CPRC), which identified (mostly from media reports) 135 attacks on pro-life churches and pregnancy resource centers, compared to only six attacks on abortion clinics since the date the Supreme Court's opinion in *Dobbs* leaked. And he asserts that, under the FACE Act, the Department has prosecuted only two people under the FACE Act for attacking pregnancy resource centers, while prosecuting 26 pro-life activists under the same statute. But most of the incidents in the CPRC study appear to allege vandalism in potential violation of § 248(a)(3), rather than obstruction in violation of § 248(a)(1), which is what Vaughn was prosecuted for. And the government could exercise its discretion to prosecute obstruction rather than vandalism without violating the Equal Protection Clause. Nor did Vaughn request an evidentiary hearing in the

district court or (for example) present any testimony from workers at pregnancy-resource centers, to the effect that obstruction at those centers had gone unprosecuted. Thus, as an evidentiary matter, as to his selective-prosecution claim, Vaughn has not shown a serious merits question that justifies a stay.

Second, Vaughn argues that 18 U.S.C. § 241 does not cover his conduct here. Section 241 makes it unlawful to "conspire to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States." 18 U.S.C. § 241. Meanwhile, a statute that creates a private cause of action necessarily secures a right under that statute. *See Gonzaga University v. Doe*, 536 U.S. 273, 279–80 (2002). Here, the FACE Act permits "[a]ny person aggrieved by reason of the conduct prohibited by" the provision under which Vaughn was charged to sue for damages. 18 U.S.C. § 248(c)(1). Thus, the FACE Act appears to create a right secured by "laws of the United States," and the government may prosecute Vaughn under Section 241 for conspiring to violate that right. *See Gonzaga*, 536 U.S. at 280.

Third, Vaughn argues that the FACE Act is a facially unconstitutional content-based regulation of speech. We have already held that it is not. *See Norton v. Ashcroft*, 298 F.3d 547, 553 (6th Cir. 2002). But Section 241 does not cover "any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment." 18 U.S.C. § 248(d)(1). The statute's "sweep" therefore does not reach conduct protected by the First Amendment. And Vaughn's own conduct—physical obstruction—was not protected by the First Amendment. His facial challenge is thus likely to fail.

Vaughn's remaining arguments show little promise of success. We have already held that the FACE Act is a constitutional exercise of Congress's power under the Commerce Clause, and

the Supreme Court's decision in *Dobbs* provides no reason to reconsider that decision. *See Norton*, 298 F.3d at 559. Nor did *Dobbs* remove Congress's ability to regulate abortion clinics and their surroundings. Finally, we see little promise in Vaughn's argument that the Supreme Court's holding in *Fischer v. United States*, 144 S. Ct. 2176 (2024)—which addressed the scope of the Sarbanes-Oxley Act—somehow affects the scope of 18 U.S.C. § 241.

None of these preliminary judgments represent the final word on Vaughn's constitutional or statutory arguments. But, at this stage, Vaughn has not raised the "serious questions going to the merits" that would be necessary to grant his motion for a stay. *See Luxshare*, 15 F.4th at 783 (citation omitted). We therefore need not reach the remaining factors that govern stay motions.

The motion for a stay pending appeal is **DENIED**.

ENTERED BY ORDER OF THE COURT

Kelly L. Stephens, Clerk